UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TEWOLDE WOLDESELASSIE TEWOLDE,<br><br>                  Plaintiff,<br><br>           v.<br><br>MARILYN WILES, et al.,<br><br>                  Defendants. | CASE NO. C11-1077JLR<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

In this immigration case, Plaintiff Tewolde Woldeselassie Tewolde seeks a court order (1) declaring that Defendants Marilyn Wiles, in her official capacity as the Director of the Nebraska Service Center for the United States Citizenship and Immigration Services ("USCIS"); Alejandro Mayorkas, in his official capacity as the Director of USCIS; and Janet Napolitano, in her official capacity as the Secretary of the Department of Homeland Security ("DHS"), have unreasonably delayed processing his I-485

application for adjustment of his status to permanent resident; and (2) compelling Defendants to immediately adjudicate his I-485 application. (*See generally* Compl. (Dkt. # 1).) Defendants have moved to dismiss Mr. Tewolde's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment. (Mot. (Dkt. # 7).) Having considered the submissions of the parties, the balance of the record, and the relevant law, the court DENIES Defendants' motion to dismiss, and DENIES Defendants' motion for summary judgment without prejudice to renew it (Dkt. # 7).[1]

## II. BACKGROUND

Mr. Tewolde is an Eritrean citizen who was granted asylum in the United States on February 25, 2002. (Compl. ¶ 1, Ex. 1; Baggerly Decl. (Dkt. # 7-2) ¶¶ 3-4.) On August 19, 2003, Mr. Tewolde filed an I-485 application with USCIS to adjust his status to lawful permanent resident. (Compl. ¶ 1, Ex. 2; Baggerly Decl. ¶ 5.) Although the necessary background and security checks have been completed, Mr. Tewolde's application remains open and pending. (Baggerly Decl. ¶¶ 5, 9-12.)

At the time Mr. Tewolde filed his I-485 application, asylum-based adjustment applications were subject to an annual numerical limitation of 10,000. (*Id.* ¶ 7.) These applications were adjudicated in the order in which they were filed, and as a result of the numerical limitation, applications like Mr. Tewolde's that were filed in August 2003

---

[1] Neither party has requested oral argument, and because the parties have fully briefed the issues before the court, the court deems Defendants' motion to be appropriate for decision without a hearing.

faced a waiting period of approximately five years. (*Id.*) In May 2005, however, President Bush signed into law the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005), which lifted the annual numerical cap on asylum adjustment applications. In 2008, USCIS completed adjudication of pending asylum-based adjustment applications that had been affected by the numerical limitation. (Baggerly Decl. ¶ 8.)

Although Mr. Tewolde's application is no longer waiting to be adjudicated because of the annual numerical limitation, it remains pending because his asylum application included information that he joined the Eritrean Liberation Front ("ELF") in 1977. (*Id.* ¶¶ 14, 23.) USCIS has determined that ELF is a Tier III undesignated terrorist organization as defined in 8 U.S.C. § 1182(a)(3)(B)(vi). (Baggerly Decl. ¶ 15.) Therefore, Mr. Tewolde's application contains information that he provided material support to a terrorist organization, which would likely result in USCIS denying his application. (*Id.* ¶¶ 14-16, 23.)

In light of Mr. Tewolde's connection to ELF, USCIS placed his application on administrative hold pursuant to an agency policy stemming from the Consolidated Appropriations Act of 2008 ("the CAA"). (Baggerly Decl. ¶¶ 18-21.) Among other things, the CAA expanded the Secretary of Homeland Security's discretionary authority to exempt certain terrorism-related grounds for inadmissibility as they relate to individual aliens and to exempt certain Tier III organizations from being considered terrorist organizations. *See* 8 U.S.C. § 1182(d)(3)(B)(i). In March 2008, the Deputy Director of USCIS issued a memorandum instructing adjudicators to withhold adjudication of I-485

applications where the applicant could benefit from the Secretary's expanded discretionary authority under the CAA.[2] (Baggerly Decl. ¶ 21.) As of June 2011, USCIS had granted nearly 14,000 exemptions pursuant to the Secretary's discretionary exemption authority, and between June 2010 and December 2010, USCIS released over 3,400 cases from hold after a group-based review of pending applications on hold. (*Id.* ¶ 22.) None of the discretionary exemptions that have been issued to date, however, benefit Mr. Tewolde. (*Id.* ¶ 19.) Mr. Tewolde's application is on hold until there is an exercise of the discretionary exemption authority that would apply to him. (*Id.* ¶ 24.)

On June 30, 2011, Mr. Tewolde filed his complaint in the instant dispute alleging that Defendants' delay in adjudicating his I-485 application violates the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, and the federal mandamus statute, 28 U.S.C. § 1361. (*See generally* Compl.) Mr. Tewolde alleges that his application has been pending for over seven and a half years longer than USCIS's most recent processing estimates, and that USCIS has provided no time-frame for completing its adjudication of his application. (*Id.* ¶ 22.) He further alleges that individuals who have been granted asylum obtain important rights upon becoming lawful permanent residents, including moving toward becoming a United States citizen. (*Id.* ¶ 14.) Mr. Tewolde claims that USCIS's failure to adjudicate his application is unreasonable and unlawful, and that he has been aggrieved by Defendants' inaction. (*Id.* ¶¶ 20, 25.) Mr. Tewolde asks the court to

---

[2] The Deputy Director issued additional guidance related to the March 2008 memorandum in July 2008 and February 2009. (Baggerly Decl. ¶ 21.)

declare that Defendants' failure to adjudicate his application violates the APA and order Defendants to immediately adjudicate his application. (*Id.* at 10.)

Defendants have moved to dismiss Mr. Tewolde's complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. (*See generally* Mot.) In the alternative, Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (*See generally Id.*)

### III. ANALYSIS

**A. Legal Standards**

    **1. Motions to Dismiss**

When considering a motion to dismiss pursuant to Rule 12(b), the court must accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party. *Newdow v. Lefevre*, 598 F.3d 638, 642 (9th Cir. 2010) (Rule 12(b)(6)); *Carson Harbor Village, Ltd. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004) (Rule 12(b)(1)). Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint to declarations or other evidence in the record. *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). When considering a Rule 12(b)(6) motion to dismiss, however, the court may not consider matters outside the pleadings. *United States v. LSL Biotechnologies*, 379 F.3d 672, 699 (9th Cir. 2004).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 667 F.3d 1022, *4 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

### 2. Summary Judgment

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" in order to withstand summary judgment. *Galen*, 477 F.3d at 658. The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B. Defendants' Rule 12(b)(1) Motion to Dismiss**

Defendants argue that this court does not have jurisdiction over Mr. Tewolde's complaint based on 8 U.S.C. § 1252(a)(2)(B)(ii). (Mot. at 9-10.) Section 1252(a)(2)(B)(ii) states in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

8 U.S.C. § 1252(a)(2)(B)(ii). Defendants acknowledge that district courts in the Ninth Circuit have held that, despite section 1252(a)(2)(B)(ii), they have jurisdiction to consider claims involving adjustment of status applications where there is unreasonable delay. (Mot. at 9 n.8 (citing *Liu v. Chertoff*, No. C07-734, 2007 WL 2119427 (N.D. Cal. July 23, 2007); *Hong Wang v. Chertoff*, 550 F. Supp. 2d 1253 (W.D. Wash. 2008); *Chen v. Heinauer*, C07-00103-RSL, 2007 WL 1468789 (W.D. Wash. May 18, 2007); *Huang v. Gonzalez*, No. 07-0096-RSM, 2007 WL 1302555 (W.D. Wash. May 2, 2007)).) The court recognizes that this position is not unanimous. *See, e.g.*, *Singh v. Napolitano*, 710 F. Supp. 2d 123 (D.D.C. 2010) (holding that the court lacked jurisdiction). Nevertheless, this court is persuaded by the analysis of the majority of decisions that have found jurisdiction. *See, e.g.*, *Chen*, 2007 WL 1468789, at *2-3; *Huang*, 2007 WL 1302555 at *2-3; *Sun v. Mueller*, No. C07-0083RSL, 2007 WL 2751372, at *2 (W.D. Wash. Sept. 19, 2007); *Singh v. Heinauer*, No. C07-1151RAJ, 2008 WL 5110862, at *2 (W.D. Wash. Dec. 3, 2008); *Hassane v. Holder*, No. C10-314Z, 2010 WL 2425993, at *3 (W.D. Wash.

Jun. 11, 2010) (collecting cases); *Mugomoke v. Curda*, No. 2:10-CV-02166 KJM DAD, 2012 WL 113800, at *4-*5 (E.D. Cal. Jan. 13, 2012). For the same reasons articulated in these decisions, the court finds that it has jurisdiction over Mr. Tewolde's complaint. Accordingly, the court denies Defendants' Rule 12(b)(1) motion to dismiss.

## C. Defendants' Rule 12(b)(6) Motion to Dismiss

Defendants next argue that Mr. Tewolde fails to state a claim for violation of the APA. (Mot. at 12-13.) "Under the APA, a delay in an administrative procedure is only unreasonable if the delay results in prejudice to the plaintiff." *Hassane*, 2010 WL 2425993, at *3 (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004) ("Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that caused it harm.") (quotations omitted)). Defendants maintain that the complaint does not allege any harm stemming from the delay or that adjudication would benefit him in any particular or substantive manner. (Mot. at 12.) They further assert that any delay actually inures to Mr. Tewolde's benefit and that while his application is pending, he enjoys his status as an asylum holder. (*Id.*)

In his complaint, Mr. Tewolde alleges that Defendants' more than seven year delay in adjudicating his I-485 application is unreasonable under the APA. (Compl. ¶ 22.) His complaint also sets forth the benefits that he would receive as a permanent resident and states that he has been "aggrieved" by Defendants' delay. (*Id.* ¶¶ 14, 25.) Indeed, if Mr. Tewolde's application is ultimately granted, he most certainly would have been harmed by Defendants' delay in adjudicating his application as it would have slowed his path towards citizenship significantly. Although Defendants have stated that

it is "likely" that Mr. Tewolde's application will be denied if it is immediately adjudicated, they have not foreclosed the possibility that it may be granted. In a factually similar case, the court in *Hassane* denied the government's Rule 12(b)(6) motion to dismiss because, "[c]onstruing the complaint in the light most favorable to the plaintiff, it is possible that [he] will benefit by having a final adjudication of his application." 2010 WL 2425993, at *4. Similarly, the court here concludes that construing Mr. Tewolde's complaint in the light most favorable to him, he has stated a claim under the APA such that dismissal under Rule 12(b)(6) is not appropriate.[3]

**D. Defendants' Motion for Summary Judgment**

Because the court has concluded that dismissal of Mr. Tewolde's complaint is unwarranted, it now turns to Defendant's motion for summary judgment. Under the APA, courts are authorized to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Gelfer v. Chertoff*, No. C 06-06724 WHA, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007) (quoting *Yu*, 36 F. Supp. 2d at 935). In some cases involving I-485 applications that were put on hold after the March 2008 policy memorandum, courts have found that the delays were not unreasonable. *See, e.g.*, *Debba v. Heinauer*,

---

[3] Defendants also argue that Mr. Tewolde's complaint fails to state a claim for injunctive relief because he does not allege irreparable harm. (Mot. at 13-14.) "Irreparable harm is simply not an element of mandamus or injunctive relief under the APA." *Yu v. Brown*, 36 F. Supp. 2d 922 (D.N.M. 1999). Accordingly, the court declines to dismiss Mr. Tewolde's complaint on this ground.

366 Fed. Appx. 696 (8th Cir. 2010) (unpublished) (affirming district court's finding that nine-year delay was not unreasonable); *Ayyoubi v. Holder*, No. 4:10-CV-1881 SNLJ, 2011 WL 2983462 (E.D. Mo. Jul. 22, 2011) (finding that five-year delay was not unreasonable); *Islam v. Heinauer*, No. C 10-04222 JSW, 2011 WL 2066661 (N.D. Cal. May 25, 2011) (finding that three-year delay was not unreasonable); *Hassane*, 2010 WL 2425993 (finding that 22-month delay was not unreasonable). In other cases, courts have found that the delays were unreasonable. *See, e.g.*, *Mugomoke*, 2012 WL 113800 (denying the defendants' motion for summary judgment because they did not present evidence that seven-year delay was reasonable); *AlShamsawi v. Holder*, No. 2:10-CV-194 CW, 2011 WL 1870284 (D. Utah May 16, 2011) (finding that seven-year delay was unreasonable); *Al Karim v. Holder*, No. 08-cv-00671-REB, 2010 WL 1254840 (D. Colo. Mar. 29, 2010) (finding that eight-year delay was unreasonable); *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927 (D. Minn. 2011) (finding that 13-year delay was unreasonable).

To determine whether an agency's delay is unreasonable, courts in the Ninth Circuit apply the so-called "*TRAC*" factors: (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and

(6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."[4] *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 n.7 (9th Cir. 1997) (quoting *Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*")). For the reasons described below, the court concludes, based on the record before it, that Defendants have not satisfied their burden on summary judgment of presenting evidence that the delay in this case is reasonable.

**1. First and Second *TRAC* Factors**

The second factor is easily disposed of because "there is no timetable in either the statute governing an applicant's adjustment of status, or the statute authorizing the Secretary's additional discretion to issue exemptions." *Hassan*, 2010 WL 2425993, at *4 (citing 8 U.S.C. §§ 1159(b), 1182(d)(3)(B)(i)); *see also Mugomoke*, 2012 WL 113800, at *7. Therefore, USCIS must adjudicate Mr. Tewolde's application within a reasonable time. *Hassan*, 2010 WL 2425993, at *4; *Mugomoke*, 2012 WL 113800, at *7.

Regarding the first factor, Defendants contend that the delayed adjudication of Mr. Tewolde's I-485 application is governed by a "rule of reason." (Mot. at 15-17.)

---

[4] Although Mr. Tewolde has brought both APA and mandamus claims, the court employs the framework for analyzing claims of unreasonable delay under the APA. *See Independence Mining Co.*, 105 F.3d at 507 (noting that mandamus relief and a mandatory injunction under the APA are essentially the same and applying the *TRAC* factors to analyze the plaintiff's claims); *Ying He v. Gonzalez*, No. C07-02765, 2007 WL 4259453, at *2 (N.D. Cal. Dec. 4, 2007) (noting that whether the court proceeds under the plaintiff's mandamus claim or APA claim is "not of practical significance" and applying the *TRAC* factors); *Yu*, 36 F. Supp. 2d at 928 (applying the same standards to assess the merits of claims of unreasonable agency delay that seek either mandamus relief, a mandatory injunction under the APA, or both).

Defendants explain that the delay between August 2003 when Mr. Tewolde filed his application and March 2008 when his application was placed on administrative hold was justified by the five-year backlog in cases created by the annual numerical cap. (*Id.* at 16.) Defendants also assert that the administrative hold that has been in place since March 2008 is justified as being based directly on USCIS's CAA-based policy and inures to Mr. Tewolde's benefit. (*Id.*) Defendants maintain that the exemption process does not move quickly as it requires consultation between the Secretary of State, the United States Attorney General, and the Secretary of Homeland Security. (*Id.* (citing 8 U.S.C. § 1182(d)(3)(B)(i); Baggerly Decl. ¶ 20).)

The court finds Defendants' arguments unpersuasive. First, the backlog created by the annual numerical cap justifies only some of the delay between 2003 and 2008. Defendants have submitted evidence that although the REAL ID Act of 2005 lifted the annual numerical limitation, all pending I-485 applications were not immediately adjudicated. (Baggerly Decl. ¶ 8.) Rather, they were adjudicated in the order in which they were filed, and USCIS did not eliminate the backlog created by the annual numerical limitation until 2008. (*Id.* ¶¶ 7-8.) This evidence, however, indicates that USCIS increased the rate at which I-485 applications were adjudicated after the REAL ID Act went into effect. Indeed, by 2008—the original estimate for when Mr. Tewolde's application would reach the front of the queue—not only had USCIS processed all applications from 2003, it had processed all applications that were filed between August 2003 and May 2005 when the REAL ID Act went into effect. (*See id.*) Therefore, because the applications were processed in the order in which they were received, Mr.

Tewolde's 2003 application should have been processed well before 2008 when USCIS finished processing the applications that had been filed in 2005, just before the Real ID Act went into effect. Although the record does not indicate precisely when Mr. Tewolde's application should have been processed, viewing the evidence in his favor, Defendants have not established that a "rule of reason" governed the entirety of the delay between 2003 and 2008.

The court similarly is not convinced that the 2008 policy memorandum ordering an administrative hold on Mr. Tewolde's application constitutes a "rule of reason." The court recognizes that exemption decisions may be time-consuming, and "[o]ne would hope such a determination is not made lightly." *Khan v. Scharfen*, No. 08-1398 SC, 2009 WL 941574, at *9 (N.D. Cal. Apr. 6, 2009); *see also Al-Rifahe*, 776 F. Supp. 2d at 936 ("There is no doubt that the determination of whether Al-Rifahe should be granted an exemption is a delicate and difficult task and USCIS is striving to maintain consistency and make reasoned decisions.") (internal quotation and alteration omitted). The court, however, "cannot ignore the agency's obligation to act on plaintiff's application in a reasonably timely manner." *Al-Rifahe*, 776 F. Supp. 2d at 936 (quoting *Al Karim v. Holder*, No. 08-0671, 2010 WL 1254840, at *3 (D. Colo. Mar. 29, 2010)). Courts have routinely found that USCIS cannot indefinitely defer adjudication of I-485 applications that are on hold pursuant to the March 2008 memorandum. *E.g.*, *Hassane*, 2010 WL 2425993, at *4 ("The government cannot defer making a decision on Hassene's application indefinitely."); *Singh*, 2008 WL 5110862, at *4 (granting summary judgment to the defendants where the delay was only eight months but noting that its decision

ORDER- 13

"should not be interpreted as suggesting that Defendants may indefinitely delay a decision on Mr. Singh's application"); *Mugomoke*, 2012 WL 113800, at *7 ("[F]or defendants to hold the application indefinitely in case they might, at some unspecified point in the future, consider an exemption does not constitute a 'rule of reason' that allows this court to find the delay reasonable."); *Al-Rifahe*, 776 F. Supp. 2d at 936-37 (holding that 13-year delay in adjudication of I-485 application was unreasonable in light of indefinite hold); *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1144 (D. Ariz. 2008) ("The lack of a specific timetable does not mean that USCIS can take an indefinite amount of time to process Plaintiff's adjustment of status application.").

The evidence in the record, when viewed in the light most favorable to Mr. Tewolde, establishes that his I-485 application, which was filed nearly nine years ago, currently is subject to an indefinite hold. Defendants have submitted no evidence regarding when Mr. Tewolde might be granted an exemption, if at all. The record is silent as to how the reviews for a discretionary exemption are being conducted, how long a typical review has taken, how many applications are waiting to be considered for a discretionary exemption, how many applications will be considered before Mr. Tewolde's, or how many Tier III organizations have not been exempted after being considered for an exemption. Moreover, Defendants have provided no specific reason why Mr. Tewolde's application cannot be adjudicated immediately, much less in an expedited manner. On the facts before it, the court cannot say that the delay in this case due to the indefinite administrative hold is governed by a "rule of reason."

### 2. Third and Fifth *TRAC* Factors

The third and fifth factors, which overlap, require the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay. *TRAC*, 750 F.2d at 80. Defendants argue that Mr. Tewolde "is not prejudiced when [any] inconvenience [to him] is balanced against Defendants' interest in complying fully with the Congressional mandates of the CAA and the resulting USCIS policy." (Mot. at 18.) Defendants assert that Mr. Tewolde actually benefits from the adjudication hold because he otherwise would face denial of his application. (*Id.*) Defendants also contend that USCIS's interest in national security and the issuance of potential exemptions outweighs Mr. Tewolde's interest in the immediate adjudication of his application. (*Id.* at 19.)

Defendants' arguments do not persuade the court that the third and fifth factors weigh in their favor. First, with respect to the third factor, courts have recognized that human health and welfare are implicated when I-458 applications are not timely adjudicated. *Al-Rifahe*, 776 F. Supp. 2d at 937 ("[D]elay in this arena is less tolerable given that human health and welfare are at stake.") (quoting *Singh v. Still*, 470 F. Supp. 2d 1064, 1069 (N.D. Cal. 2007)). As Mr. Tewolde points out, his ability to travel is restricted by his status as an asylum holder, and he cannot accrue credit toward naturalization. (Resp. at 9.) These harms involve human health and welfare and illustrate at least some ways in which Mr. Tewolde potentially is prejudiced by the delayed adjudication. In addition, the fact that Mr. Tewolde wants USCIS to adjudicate his application now, despite USCIS's warnings that it likely will deny his application,

supports an inference that the harm of the delay is not remote or insignificant. *See Mugomoke*, 2012 WL 113800, at *8.

Moreover, Defendants' argument that Mr. Tewolde benefits from the delayed adjudication is largely speculative. As the court in *AlShamsawi* reasoned when considering a similar argument by the government in that case, "Until the question [of whether the plaintiff benefits from the delay] is posed in the actual and not the hypothetical, the Defendants cannot say with certainty what the outcome will be."[5] *AlShamsawi*, 2011 WL 1870284, at *3. The court further explained:

> If his application is adjudicated now, it will either be approved or rejected. If it is approved, Mr. AlShamsawi will obtain the benefits associated with being a legal permanent resident and immediately be eligible to apply for citizenship. If it is rejected, which the Defendants assert is the most likely outcome, Mr. AlShamsawi can go about seeking whatever relief may be available in that event. . . .
>
> If, on the other hand, the court does not mandate the adjudication now, Mr. AlShamsawi will maintain the benefits of his refugee status during the duration of the delay. But Mr. AlShamsawi will also continue to be on hold indefinitely, without any guarantee that his group will ever be considered for an exemption. Moreover, since the March 26, 2008 directive appears to be discretionary, it may be changed at any time. If it is changed, and if an exemption is not yet available to him when it does, his application could be denied at that point. Even if further delay can be said to benefit Mr. AlShamsawi, then, the value of this benefit is difficult to determine at this point. Further delay also gives . . . Mr. AlShamsawi . . . [no] guarantee as to the outcome.

---

[5] The *AlShamsawi* court did not apply the *TRAC* factors, however it applied similar factors that included considering the consequences of the delay. *AlShamsawi*, 2011 WL 1870284, at *2 (outlining the "*Qwest*" factors, which are similar to the *TRAC* factors). As both the *TRAC* and *Qwest* factors involve consideration of the impact of the delay, the court considers the analysis in *AlShamsawi* instructive here.

*Id.* at *4. The court finds the *AlShamsawi* court's observations applicable in the instant matter. Although Mr. Tewolde may ultimately benefit from the administrative hold, there certainly is no guarantee of that at this point. Accordingly, the court is not persuaded by Defendants' argument that the administrative hold does not prejudice Mr. Tewolde.

Finally, although national security is certainly of great concern, it is "not directly relevant to the issue in this case." *Mugomoke*, 2012 WL 113800, at *7. Mr. Tewolde disclosed his affiliation with ELF on his asylum application, and asylum was still granted. "Regardless of the outcome of the I-485 adjudication, the government will still retain the power and ability to remove [Mr. Tewolde] from the country should he pose a threat." *Id.* Moreover, "[i]f this case involves national security or foreign policy repercussions, such repercussions seem inevitable." *AlShamsawi*, 2011 WL 1870284, at *3. Yet Defendants have not argued that national security would be compromised by expediting adjudication of Mr. Tewolde's application or that they would suffer any concrete prejudice from doing so. In sum, Defendants have not satisfied their burden regarding the third and fifth *TRAC* factors.

### 3. Fourth *TRAC* Factor

With respect to the fourth factor—the effect of expediting adjudication of Mr. Tewolde's application on competing priorities—Defendants maintain that expedited adjudication would intrude on the discretion that Congress granted to Defendants to decide whether to exercise discretionary exemption authority. (Mot. at 19.) They further assert that Mr. Tewolde's request for immediate adjudication of his eligibility for an

exemption intrudes upon a discretionary matter that lies outside the scope of relief under the federal mandamus statute or the APA. (*Id.*)

Defendants, however, have presented no evidence that they would be unable to expedite consideration of Mr. Tewolde's application or that doing so would impact USCIS's competing priorities. It is true, as Defendants point out, that "the level of discretion given to the Secretaries and the agency by Congress is quite high . . . ." *Ayyoubi v. Holder*, No. 4:10-CV-1881 SNLJ, 2011 WL 2983462, *10 (E.D. Mo. Jul. 22, 2011). Nevertheless, courts have recognized that USCIS is lawfully required to adjudicate I-485 applications and that the APA allows courts to compel USCIS to act should the agency unreasonably fail to do so. *E.g.*, *Mugomoke*, 2012 WL 113800, at *9. Contrary to Defendants' assertions, therefore, requiring Defendants to comply with the law by expediting consideration of an unreasonably delayed application is not beyond the relief provided by mandamus or the APA. As the *Mugomoke* court recently concluded, "[i]f the only effect of expediting the application is the loss of an authority that the court has determined is *ultra vires*, this factor does not militate in defendants' favor." *Id.*

### 4. Sixth *TRAC* Factor

The final factor is whether Defendants have acted improperly or in bad faith. *TRAC*, 750 F.2d at 80. Here, Mr. Tewolde does not allege that Defendants have acted in bad faith, nor is there evidence in the record of impropriety or bad faith. (Resp. (Dkt. # 11) at 10.) The court thus concludes that this factor is neutral because "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80.

### 5. Weighing the *TRAC* Factors

After considering the TRAC factors as they apply to the specific facts of this case, the court concludes that Defendants have not satisfied their burden of presenting evidence upon which the court can conclude that the nearly nine-year delay in adjudicating Mr. Tewolde's I-485 application is reasonable. The evidence in the record, when viewed in the light most favorable to Mr. Tewolde, establishes that his application is subject to an indefinite hold, that the delay is not justified by a "rule of reason," that he has been harmed by the delay, and that there is no compelling reason why Defendants cannot expedite the processing of his application. In denying Defendants' motion, however, the court does not foreclose the possibility that Defendants could present evidence at or before trial establishing that Mr. Tewolde's application is not on an indefinite hold, which could change the relative weights of the *TRAC* factors. At the same time, despite the national security concerns raised by the Tier III exemption process, the court is mindful that USCIS has a legal obligation to adjudicate Mr. Tewolde's I-485 application, and it cannot unreasonably delay doing so.

\\

\\

\\

\\

\\

\\

\\

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Defendants' motion to dismiss, and DENIES Defendants' motion for summary judgment without prejudice to renew it (Dkt. # 7).

Dated this 7th day of March, 2012.

JAMES L. ROBART
United States District Judge